**Ex Parte Judy Cox SWATE.**

**No. B14–94–00050–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 7, 1994.

Rehearing Denied May 5, 1994.

Joel A. Nass, Houston, for appellant.

Cheryle R. Johnston, Robin M. Ziek, C. Don Guttman, Joan M. Denton, Houston, for appellee.

Before ROBERTSON and SEARS, JJ., and MORSE, J., Sitting by Assignment.

## OPINION

SEARS, Justice.

Relator comes before this Court to petition for a writ of habeas corpus, alleging that she is illegally incarcerated in the Harris County Jail for contempt of a trial court's turnover order. Judy Cox Swate and Tommy Swate were divorced on March 26, 1992, in the 312th District Court of Harris County. Mr. Swate was ordered to pay into the registry of the 312th District Court all checks made payable to him from Hardy, Milutin and Johns. After all payments were deposited in the registry, the money was to be released to Relator, pursuant to the divorce decree.

Prior to the Swate's divorce, Dian Hartwell had obtained a post divorce final judgment against her ex-husband, Tommy Swate, in the 309th District Court of Harris County. Relator, although married to Mr. Swate at the time, was not named as a party to Ms. Hartwell's suit. Subsequent to Relator's and Mr. Swate's divorce, Ms. Hartwell moved for a turnover order in the 309th District Court, requiring Relator to, "upon receipt of any funds from the registry of the 312th District Court, immediately tender all of said funds to John J. Eikenburg, receiver herein, endorsed payable to him." The order was signed on May 10, 1993.

Relator withdrew the money from the 312th District Court's registry, but failed to comply with the 309th District Court's turnover order. Mr. Eikenburg, as Receiver, filed a motion for contempt. A show cause order was signed on June 14, 1993, and a hearing was set for July 8, 1993. On July 15, 1993, Relator filed an answer to the motion for contempt, and a motion to vacate the turnover order. A hearing was held on September 7, 1993. After evidence was presented, the Court found that Ms. Swate's attorney had notice of the turnover order on and before May 10th. The Court further found Ms. Swate's testimony, that her attorney did not tell her about the order, was not credible, and, that "somewhere between June 24th and absolutely no later than July 8th, Ms. Swate did learn of the existence of the order and the Motion for Contempt." Finally, the Court found that although Ms. Swate had disposed of most of the money she withdrew, there was "ten or twelve thousand dollars ... properly belonging to the Receiver" in Relator's possession.

Therefore, the Court orally held Relator in contempt for failure to turnover the funds to the receiver. The Court ordered Relator to spend three days in jail plus a $500.00 fine, suspended until 9:00 a.m. on September 10, 1993, *if* Relator paid $10,000.00 to the receiver plus the $500.00 fine by 9:00 a.m. on September 10, 1993. If Relator failed to pay a $500.00 fine and $10,000.00 to the receiver by 9:00 a.m. on September 10, 1993, she was to be jailed for 3 days, plus day to day confinement until the $10,000.00, the fine and $13,876.00 in attorney's fees were paid.

On September 9, 1993, this Court issued a stay of all proceedings pending our disposition of a writ of mandamus filed by Ms. Swate. On September 10, 1993, the 309th District Court held a hearing and signed a written order, reflecting its ruling on September 7, 1993, and suspended commitment

until this Court lifted its stay. The writ was denied and the stay was lifted on September 30, 1993. A compliance hearing was held on January 20, 1994, to determine if Ms. Swate had complied with the trial court's order. The trial court found that Relator had not complied with its orders, and issued an order of commitment. It is from this order that Relator filed her writ of habeas corpus.

Relator claims that she is illegally confined because the order of commitment is based upon a void turnover order. She asks this Court to review the turnover order, and hold that both it and the order of commitment are void. For this Court to order Relator released from custody, Relator must establish that the order of commitment is void either because the trial court lacked jurisdiction to enter the order, or because the order deprived her of her liberty without due process. *Ex parte Bagwell,* 754 S.W.2d 490, 491 (Tex.App.–Houston [14th Dist.] 1988, orig. proceeding). A writ of habeas corpus is not a substitute for litigating matters that should have been raised on direct appeal. *Ex parte Goodman,* 816 S.W.2d 383, 385 (Tex.Crim.App.1991), and *Bennet v. State,* 818 S.W.2d 199, 200 (Tex.App.–Houston [14th Dist.] 1991, no pet).

Relator had the right to complain of the turnover order on direct appeal. *Schultz v. Fifth Judicial District Court of Appeals,* 810 S.W.2d 738, 740 (Tex.1991). Her failure to do so does not entitle her to a review of that order by way of habeas corpus. See, *Ex parte Johnson,* 654 S.W.2d 415 (Tex.1983). Nothing on the face of the order indicates that it is void.[1] It is improper for Relator to contest the validity of that turnover order through this habeas proceeding. *Ex parte Johnson,* 654 S.W.2d 415 (Tex.1983); *Ex parte Goodman,* 816 S.W.2d 383, 385 (Tex. Crim.App.1991); and *Bennet v. State,* 818 S.W.2d 199, 200 (Tex.App.–Houston [14th Dist.] 1991, no pet). Her application for writ of habeas corpus on this ground is denied.

Relator next contends that the order is void because she was denied due process. She claims that she received no personal service, and that the orders fail for lack of specificity. "Due process requires that the alleged contemner be personally served with a show cause order *or that it be established that he had knowledge of the content of such order." Ex parte Blanchard,* 736 S.W.2d 642 (Tex.1987) (emphasis added). Although the show cause hearing was originally scheduled for July 8, 1993, the hearing was reset to September 7, 1993. Relator responded to the motion for contempt and show cause order by an answer filed on July 15, 1993. Although she claims she was not "personally" served, the evidence shows that Relator did have timely *actual* knowledge of the contents of the order. Accordingly, we do not find that Relator was denied due process in this manner.

Due process also requires that before a party may be held in contempt for disobeying a court order, the order "must spell out the terms of compliance in clear, specific and unambiguous terms." *Ex parte Price,* 741 S.W.2d 366, 367 (Tex.1987). The turnover order is clear that Relator was to hand over to John J. Eikenburg any and all funds received by her from the registry of the 312th District Court, immediately upon receipt of those funds. The contempt order must also clearly state in what manner the prior order has been violated. *Ex parte McClain,* 762 S.W.2d 238, 240 (Tex.App.–Beaumont 1988, orig. proceeding). Even Relator admitted on oral argument that the contempt order and the order of commitment are very specific. We find that the orders clearly delineated the order which had been violated, the penalty imposed, and the manner of purging.

Relator contends that the order of contempt is void because it was signed in violation of this Court's stay. Relator, how-

---

1. The order, as recited early in this opinion, simply states that "Judy Cox Swate shall, upon receipt of any funds from the registry of the 312th District Court, immediately tender all of said funds to John J. Eikenburg, Receiver herein, endorsed payable to him." Nothing shows the trial court's alleged lack of jurisdiction to enter the order. Relator's claims that she is not liable on the judgment must be challenged on direct appeal.

ever, cites no authority for this proposition. The order of contempt was signed on September 10, 1993, but pronounced on September 7, 1993, *before* the stay was in effect. The written order was merely a recording of an order already made. Further, Relator was not committed while the stay was in effect. After the stay was lifted, a compliance hearing was held. A new order was entered on January 21, 1994, which revoked the suspension of commitment entered on September 10, 1993, and committed Relator. It is from this January 21, 1994 order that Relator has filed for release. Therefore, the order committing Relator to jail was not entered in violation of this Court's stay in September of 1993. Relator's application for writ on this ground is denied.

■ Relator further contends that the order is void because it imposed upon her impossible conditions of compliance. It is true that involuntary inability to comply with a court's order is a good defense in a contempt proceeding. *Ex parte Sanchez,* 703 S.W.2d 955, 959 (Tex.1986). It is Relator's burden to prove that compliance was impossible. *Id; Ex parte Johns,* 807 S.W.2d 768, 772 (Tex.App.–Dallas 1991, orig. proceeding). Relator has failed to shoulder her burden. Upon evidence presented, the trial court found that Relator knew about the May 10, 1993 order no later than July 8, 1993, and, that as of September 7, 1993, Relator still had at least $10,000.00 in her possession which belonged to the Receiver. Relator claims that the order is void because it was impossible to comply with the suspension portion of the contempt order. The suspension portion required her to pay $10,000.00 to the receiver and a $500.00 fine by 9:00 a.m. on September 10, 1993. However, the order of contempt was not signed until *after* 9:00 a.m. on September 10, 1993.

We find that the suspension provision was capable of compliance. The portion complained of is a suspension of commitment provision, not a purging provision. The contempt order did not *require* Relator to pay $10,000.00 by 9:00 a.m., but instead *allowed* Realtor to pay $10,000.00 by 9:00 a.m. in order to avoid commitment. *See, Ex parte Shields,* 779 S.W.2d 99, 101 (Tex.App.–Houston [1st Dist.] 1989, orig. proceeding). Relator has presented no evidence that she was incapable of complying with the turnover order, or that it was impossible for her to comply with the purging provisions of the contempt order. We note that Relator was not committed on September 10, 1993. After this Court's stay was lifted, Relator was given approximately 4 months to comply with the orders of the trial court. A hearing was held, and the court found that Realtor had still failed to turn any money over to the Receiver. "When punishment for contempt is suspended conditioned on compliance, the contemnor may not be imprisoned without a second unconditional commitment order, and in some circumstances, a hearing to determine ... compliance." *Ex parte Wilson,* 797 S.W.2d 6, 7 (Tex.1990). Relator got both a hearing and a new, unconditional order. She has failed in her burden of proof to show that it was impossible for her to turn over the money between September 30, 1993, and January 20, 1994. We find that her decision not to turn over the funds was a voluntary one. Her application for writ on this ground is denied.

■ Relator also claims that the commitment order is void because the original contempt order was oral and not written. It is true that a contempt order must be in writing and signed before a person can be confined. *Ex parte Jordan,* 865 S.W.2d 459 (Tex.1993); *Ex parte Johns,* 807 S.W.2d 768, 774 (Tex.App.–Dallas 1991, orig. proceeding). It is also true that the order allegedly violated should be in writing. *Ex parte Price,* 741 S.W.2d 366 (Tex.1987). Relator does not contend that the turnover order, order of commitment or order of contempt are not written orders. Nor does Relator contend that she was confined before any of these orders were reduced to writing. Relator only contends that she did not have to comply with the court's oral order of contempt before September 10, 1993, because it was not in writing. Relator can not cite any

authority for this proposition, and we can find none. The court's order was subsequently reduced to writing. The only prohibition against such an order is that it be reduced to writing *before* a person is restrained. That was done in this case. Relator's claims on this ground are also denied.

Relator's writ of habeas corpus is denied, her bond is revoked, and she is remanded to the custody of the Harris County Sheriff.